**UNITED STATES, Appellee,**

v.

**Richard M. WILLIAMSON, Jr., Staff Sergeant, U.S. Air Force, Appellant.**

No. 56,964.
ACM 25049.

U.S. Court of Military Appeals.

May 9, 1988.

For Appellant: *Major Deborah A. Baker* (argued); *Colonel Leo L. Sergi* (on brief); *Colonel Fred W. Kuhn.*

For Appellee: *Captain Marc Van Nuys* (argued); *Colonel Joe R. Lamport* and *Lieutenant Colonel Robert E. Giovagnoni* (on brief).

*Opinion of the Court*

COX, Judge:

Appellant was convicted by a judge sitting as a general court martial of attempted rape, committing indecent acts, and sodomy with his 4–year-old daughter, in viola-

tion of Articles 80, 125, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 925, and 934, respectively. The convening authority disapproved the findings of guilty of committing indecent acts, but approved the remaining findings of guilty and the adjudged sentence extending to confinement for 10 years, total forfeitures, reduction to Airman Basic, and a dishonorable discharge. The Court of Military Review affirmed the approved findings and sentence. 23 M.J. 706 (1986). We granted the following three issues for consideration:

I

WHETHER THE MILITARY JUDGE ERRED BY ADMITTING A SOCIAL WORKER'S HEARSAY TESTIMONY ABOUT THE VICTIM'S ALLEGATIONS AS STATEMENTS FOR MEDICAL DIAGNOSIS OR TREATMENT UNDER MIL.R.EVID. 803(4).

II

WHETHER THE MILITARY JUDGE ERRED BY ADMITTING HEARSAY TESTIMONY BY THE VICTIM'S GRANDFATHER UNDER THE RESIDUAL HEARSAY EXCEPTION ABOUT HER *EX PARTE* STATEMENTS TO HIM.

III

WHETHER THE MILITARY JUDGE ERRED BY PERMITTING THE PROSECUTION TO MAKE A MAJOR CHANGE TO THE SPECIFICATION OF CHARGE I AFTER BOTH SIDES RESTED FOR FINDINGS.

Additionally, we specified the following issue:

WHETHER THE EVIDENCE IS SUFFICIENT TO SUSTAIN THE FINDINGS OF GUILTY AS TO ALL APPROVED CHARGES AND SPECIFICATIONS.

This case has a sordid history similar to many of the child-abuse cases that we currently review. Appellant, a staff sergeant in the Air Force, was married and had two children, Kimberly, age 4 at the time of the alleged offenses, and Ricky, who was younger. The alleged incidents arose during a time of intense marital discord between appellant and his wife. Appellant's wife had separated from appellant and had removed the children from the state of Washington to Arkansas, where the children resided with their maternal grandparents. The charges against appellant arose at or about the time a bitter struggle developed over the custody of the children. Of particular significance is the fact that the *grandparents* were seeking custody of the children to the exclusion of both appellant and their daughter, the natural mother of the children.

A review of the record reveals *no* direct evidence of misconduct on the part of appellant. There were no witnesses to his alleged conduct; there was no excited utterance of the child to a babysitter or disinterested third party; indeed, there was no complaint or excited utterance to appellant's wife. There was no evidence of physical injury to the child. Most importantly, the child herself refused to testify that her father had molested her, despite extraordinary efforts by trial counsel and the military judge to elicit incriminating testimony.[1]

The entire government case against appellant consisted of two witnesses. First, the Government relied on the testimony of Melissa Stafford, a social worker specializing in counseling with children and their families. Miss Stafford first saw the child in August of 1984, some 2 or 3 weeks after the children had been taken to Arkansas following the alleged incidents. The child was seen at the request of the maternal

---

1. For example, the military judge allowed trial counsel to take several recesses, and he split the child's testimony to permit the grandfather and the social worker, Miss Stafford, to be in the courtroom with her to lend moral support. Naturally and expectedly he permitted counsel to lead the child. In spite of these measures, the child steadfastly refused to testify against her father.

grandmother, Mrs. Kamer. Mrs. Kamer related to Miss Stafford the allegations concerning appellant.

Eventually, after numerous visits to Miss Stafford, the child related matters to Miss Stafford which she interpreted to mean that "Daddy" had sexually molested the child. Shortly before trial, however, Miss Stafford was present when the child denied that her father had ever molested her.

The only other witness implicating appellant was the maternal grandfather, Mr. Kamer. He testified that he had been rocking the child in a rocking chair when the child told him that her father had molested her.

There is no other competent evidence in the record from which a trier of fact could conclude that appellant attempted to rape this child or committed sodomy.

We turn therefore to the competence of this evidence. First, the testimony of Miss Stafford and Mr. Kamer is clearly hearsay and not admissible unless an exception is provided. Mil.R.Evid. 801(c) and 802, Manual for Courts-Martial, United States, 1984. Consequently, the question is whether the hearsay is admissible under any exception to the rule.

 We look first to the testimony of the maternal grandfather, Mr. Kamer. The military judge ruled the evidence was admissible under Mil.R.Evid. 803(24). The Court of Military Review agreed, finding:

> Child sex abuse cases present unique evidentiary problems. For example, it is not uncommon that these victims are unable upon command to publicly describe their traumatic experience, as in a court room. The telling of their story flows more easily and naturally when they sense security and trust, such as is felt in the private presence of a friend or close relative.

23 M.J. at 709.

That court then found the evidence was admissible under either Mil.R.Evid. 803(24)

or 804(b)(5). We disagree. First of all, Mil.R.Evid. 804(b)(5) is inapplicable. The child was available and did testify. The Government's problem is that the child refused to inculpate her father. Furthermore, her testimony was consistent with her denials several days before the trial that her father had molested her.

As to Mil.R.Evid. 803(24), the Government can point to no precedent from any jurisdiction which would find that a grandfather's recitation of what his grandchild told him has "guarantees of trustworthiness." His testimony is made particularly suspect when it is considered that he is seeking in a separate lawsuit to take custody of the child away from her natural father. It almost has "circumstantial guarantees of" *untrustworthiness*. While we wholeheartedly agree that the goal of detecting and prosecuting child molesters is worthwhile, the end does not justify the means employed here. We are not going to make such an all-inclusive exception to the rule. Accordingly, we find that the military judge erred by the admission of this testimony.

We would ask the bench and bar to turn their attention once again to *United States v. Hines*, 23 M.J. 125 (C.M.A.1986), and look at the "indicia of reliability" (*id.* at 129) which might cloak hearsay statements with those "equivalent circumstantial guarantees of trustworthiness." The Government has cited *United States v. Renville*, 779 F.2d 430 (8th Cir.1985), to support its contention that this spontaneous statement to the grandfather had "guarantees of trustworthiness." The circumstances surrounding the making of the child's out-of-court statement in *Renville* bear scant resemblance to the circumstances surrounding the statement here.

We cannot find this error to be harmless. Art. 59(a), UCMJ, 10 U.S.C. § 859(a).[2]

 Because we find that admission of the grandfather's testimony was reversible

---

2. Equally appalling in this case was the quantum of inadmissible hearsay that the military judge allowed to be elicited during cross-examination of the defense witnesses. For example,

appellant's estranged wife was allowed to testify that a friend told her that her babysitter told her that the victim said "daddy does it" when the babysitter found the victim and another child

error, we need not address appellant's other issues. We note, in passing, however, that although statements made to a social worker for the purpose of treatment may well qualify for admission, the conditions precedent to admissibility of hearsay under Mil.R.Evid. 803(4), the "medical history" exception, must not only be met but must also be found in the record of trial. The two conditions are: first, the statement must be "made for purposes of medical diagnosis or treatment"; and second, the patient must make the statement "with some expectation of receiving medical benefit from the medical diagnosis or treatment that is being sought." *United States v. Deland*, 22 M.J. 70, 75 (C.M.A.), *cert. denied*, — U.S. —, 107 S.Ct. 196, 93 L.Ed.2d 128 (1986); *see United States v. White*, 25 M.J. 50 (C.M.A.1987); *United States v. Welch*, 25 M.J. 23 (C.M.A.1987).

■ It is incumbent upon the moving party to show not only that the medical person was treating or diagnosing the patient, but also that the patient furnishing the information was seeking such help. Although there may be some relaxing of the quantum of proof in those situations where a child is being treated, the facts and circumstances must support a finding that both prongs of the test were met. *United States v. White, supra.*

The decision of the United States Air Force Court of Military Review is reversed, and the findings and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Air Force. A rehearing may be ordered.

Chief Judge EVERETT and Judge SULLIVAN concur.

---

playing with each other. The record is replete with many other examples of this double and triple hearsay introduced over defense objection.